IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KRAAN INVESTMENTS (USA) LLC and
KRAAN MEMPHIS LLC,

        Plaintiffs,

v.

SEAN TARPENNING,

        Defendant.

Case No. 20-2538-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiffs Kraan Investments (USA) LLC ("Kraan USA") and Kraan Memphis LLC

("Kraan Memphis") filed this action against defendant Sean Tarpenning seeking to enforce the

guaranty and indemnification provisions in their six loan agreements with U.S. Real Estate

Equity Builders LLC ("USREEB").  Doc. 1 (Compl.).  Plaintiffs filed a Motion for Summary

Judgment (Doc. 7).  Defendant filed a Memorandum in Opposition or in the Alternative a

Request for Discovery under Fed. R. Civ. P. 56(d) (Doc. 13) and plaintiffs filed a Reply (Doc.

18).  For the following reasons, the court denies the motion.[1]

---

[1]     Plaintiffs invoke the court's subject matter jurisdiction under the diversity statute—28 U.S.C. §
1332.  Doc. 1 at 2 (Compl. ¶¶ 7, 8).  Section 1332 confers original jurisdiction on federal district courts
where the amount in controversy exceeds $75,000 and complete diversity of citizenship exists between all
plaintiffs and all defendants.  28 U.S.C. § 1332(a)(1).

     Plaintiffs assert, and the record supports, that the amount in controversy exceeds $75,000,
satisfying the first requirement of diversity jurisdiction.  28 U.S.C. § 1332(a)(1).  A limited liability
company "takes the citizenship of all its members."  *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*,
781 F.3d 1233, 1234 (10th Cir. 2015).  Plaintiff Kraan USA asserts its "members are all individuals who
reside in the Australian state of Victoria."  *Id.* at 1 (Compl. ¶ 1).  Accordingly, plaintiff Kraan USA is a
citizen of Australia.  Plaintiff Kraan Memphis asserts its "members are all individuals who reside in the

## I.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute [about] any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When applying this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).  A disputed "issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  And an "issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [for] those

---

Australian state of Victoria." *Id.* at 2 (Compl. ¶ 3).  Accordingly, plaintiff Kraan Memphis is a citizen of Australia.  Defendant is an individual.  Defendant admits that he is "a resident of Kansas and could be served in Kansas" and, accordingly, is a Kansas citizen.  Doc. 21 at 1 (Am. Answer ¶ 5).  Jurisdiction is proper.

dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)).

## II.    Uncontroverted Facts[2]

The facts below are either uncontroverted for purposes of plaintiffs' summary judgment motion, or, where genuinely controverted, the court views the facts in the light most favorable to defendant, the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

---

[2]    Plaintiffs argue that defendant failed to comply with D. Kan. Rule 56.1(b)(1) and, as a result, "all facts set forth in Plaintiffs' statement of uncontroverted facts are deemed admitted." Doc. 18 at 1. D. Kan. Rule 56(b)(1) requires an opposition memorandum to contain "a concise statement of material facts as to which the party contends a genuine issue exists." Plaintiffs argue defendant violated the concise statement requirement because defendant's Response includes "12 pages in which the uncontroverted material facts asserted by Plaintiffs are discussed, some being admitted as uncontroverted, others apparently partially admitted." *Id.* at 3–4. Specifically, plaintiffs take issue with defendant including arguments in his facts. *Id.* at 3. Plaintiffs ask the court to deem plaintiffs' summary judgment motion facts undisputed. *Id.* at 4.

Plaintiffs cite *Freebird Comm'ns, Inc. Profit Sharing Plan v. Roberts*, No. 2:18-cv-02026-HLT, 2019 WL 5964583, at *1 (D. Kan. Nov. 13, 2019). In *Freebird*, discovery had closed, and plaintiffs "simply state[d] their reasons for disagreeing with those facts without citing any supporting evidence." *Id.* The court held that allegedly disputed facts are uncontroverted if they were not directly controverted by evidence contained in the record. *Id.* at *2.

Here, in contrast, defendant's statement of uncontroverted facts cites defendant's declaration. While defendant's response isn't as concise as possible, the section is "numbered by paragraph, refer[s] with particularity to those portions of the record upon which [defendant] relies, and . . . state[s] the number of [plaintiffs'] facts that is disputed." D. Kan. Rule 56.1(b). And, unlike *Freebird*, plaintiffs here filed this motion before the close of discovery and only 13 days after defendant filed an answer. *See* Doc. 7. The court declines to deem plaintiffs' summary judgment motion facts undisputed.

A.      **Loan Agreements**

U.S. Real Estate Equity Builder LLC ("USREEB") buys "distressed single family and multi-family residential and commercial properties, rehabs the properties, and then sells the properties." Doc. 13-1 at 2 (Tarpenning Decl. ¶ 5). Kraan USA and Kraan Memphis made a total of six loans, described below, to USREEB with Sean Tarpenning as Guarantor in each.

1.      **Kraan USA Loan 1A & 1B**

Starting in June 2016, Kraan USA sold three properties in the Kansas City area to USREEB—listing Sean Tarpenning as "Guarantor"—for $45,000 and accepted a $45,000 promissory note in lieu of cash resulting in Kraan USA Loan 1A. Doc. 8-1 at 2 (Kraan Decl. ¶ 7); *see also* Doc. 8-2 (Decl. Ex. A) (Kraan USA Loan 1A). Kraan USA Loan 1A required interest payments of $1,000 per month and had a repayment date—or date on which the loan would mature—of August 1, 2017. Doc. 8-2 at 1 (Decl. Ex. A) (Kraan USA Loan 1A ¶¶ 2.1, 3.1).

In August 2017, Kraan USA renewed the Kraan USA Loan 1A with USREEB and Mr. Tarpenning, resulting in Kraan USA Loan 1B. Doc. 8-1 at 2–3 (Kraan Decl. ¶ 9); *see also* Doc. 8-3 (Decl. Ex. B) (Kraan USA Loan 1B). The terms provide that Kraan USA would loan USREEB $45,000 and USREEB would pay $1,000 in interest on the first of the month. Doc. 8-3 (Decl. Ex. B) (Kraan USA Loan 1B). Unlike Kraan USA Loan 1A, Kraan USA Loan 1B does not have a specified future date for repayment. *Compare* Doc. 8-2 at 1 (Decl. Ex. A) (Kraan USA Loan 1A ¶ 3.1) ("The Company shall repay the Outstanding Principal in full on or before August 1st, 2017"), *with* Doc. 8-3 at 1 (Decl. Ex. B) (Kraan USA Loan 1B ¶ 3.1) ("The Company shall repay the Outstanding Principal in full upon 60 days of receiving written notice of the requirement to pay the Outstanding Principal"). Kraan USA Loan 1B requires that

4

USREEB receives "written notice of the requirement to repay the Outstanding Principal" then it must repay the amount in full "upon 60 days[.]" Doc. 8-3 at 1. The Guarantor—Mr. Tarpenning—"unconditionally and irrevocably guarantee[d] the punctual performance of all of [USREEB]'s obligations under this document." *Id.* at 2. Also, Loan 1B requires Mr. Tarpenning to "immediately upon demand pay [Kraan USA] any amount not paid when due by [USREEB] under this document." *Id.* Mr. Tarpenning executed the agreement and a notary signed it. *Id.* at 5.

### 2. Kraan USA Loan 2

In August 2017, Kraan USA issued another loan to USREEB with Mr. Tarpenning as Guarantor—with the same terms as Kraan USA Loan 1B—for a principal amount of $45,000 and $1,000 per month interest payments. Doc. 8-1 at 3 (Kraan Decl. ¶¶ 10–11); *see also* Doc. 8-4 (Decl. Ex. C) (Kraan USA Loan 2). The interest payments are due on the first day of the month. *Id.* at 1 (Kraan USA Loan 2 ¶ 2.1(a)). And, like Kraan USA Loan 1B, any outstanding principal is due "in full upon 60 days of receiving written notice of the requirement to repay[.]" *Id.* (Kraan USA Loan ¶ 3.1). Mr. Tarpenning executed the agreement and a notary signed it. *Id.* at 4–6.

### 3. Kraan USA Loan 3

On February 14, 2018, Kraan USA issued a third loan to USREEB for $50,000 that accrued interest at a rate of 20% per year. Doc. 8-1 at 3–4 (Kraan Decl. ¶ 15); *see also* Doc. 8-6 (Decl. Ex. E) (Kraan USA Loan 3). The loan agreement lists Sean Tarpenning as Guarantor and he executed the agreement with a notary witnessing his signature. Doc. 8-6 at 1, 6 (Decl. Ex. E) (Kraan USA Loan 3). The terms provide that USREEB must make interest payments on the last day of the month. *Id.* at 1. And, upon written demand sent to sean@usreeb.com, USREEB must

pay the principal in full within 90 days. *Id.* at 2. The contract states, "[Sean Tarpenning] must immediately upon demand pay [Kraan USA] any amount not paid when due by [USREEB] under this document." *Id.* Mr. Tarpenning executed the agreement and a notary signed it. *Id.* at 6.

### 4. Kraan USA Loan 4

On July 2, 2018, Kraan USA issued its last loan to USREEB, with Mr. Tarpenning as Guarantor, for a principal amount of $100,000 and an interest rate of 20% per annum. Doc. 8-1 at 4 (Kraan Decl. ¶ 17); *see also* Doc. 8-8 (Decl. Ex. G) (Kraan USA Loan 4). The terms require USREEB to pay the interest on the first day of each calendar month. Doc. 8-8 at 1 (Decl. Ex. G) (Kraan USA Loan 4). The agreement requires USREEB to "repay the Outstanding Principal in full upon 90 days of receiving written notice of the requirement to repay the Outstanding Principal." *Id.* And, it provides, Mr. Tarpenning "must immediately upon demand pay [Kraan USA] any amount not paid when due by [USREEB] under this document." *Id.* at 2. Mr. Tarpenning executed this agreement and a notary signed it. *Id.* at 5.

### 5. Kraan Memphis Loan 1

On February 14, 2018, Kraan Memphis agreed to lend "[USREEB]/Sean Tarpenning" a total of $170,000 with an interest rate of 20% per year with Sean Tarpenning as Guarantor. Doc. 8-10 (Kraan Memphis Loan 1); *see also* Doc. 8-1 at 4 (Kraan Decl. ¶ 19). The loan agreement requires USREEB to pay interest on the principal on the first day of the calendar month. Doc. 8-10 at 1 (Decl. Ex. I) (Kraan Memphis Loan 1). It also states USREEB "shall repay the Outstanding Principal in full within 90 days of a written request submitted to sean@usreeb.com." *Id.* at 2. It provides that "[Mr. Tarpenning] must immediately upon demand pay [Kraan

6

Memphis] any amount not paid when due by [USREEB] under this document." *Id.* Mr. Tarpenning executed the agreement and a notary witnessed it. *Id.* at 6.

### 6.        Kraan Memphis Loan 2

In June 2018, Kraan Memphis executed another loan with USREEB and Mr. Tarpenning, agreeing to loan USREEB $50,000 with a 20% interest rate per year. Doc. 8-1 at 5 (Kraan Decl. ¶ 21); *see also* Doc. 8-11 (Decl. Ex. J) (Kraan Memphis Loan 2). The terms require USREEB to pay interest on the principal on the first day of each calendar month. Doc. 8-11 at 1 (Decl. Ex. J) (Kraan Memphis Loan 2). And, it required USREEB to "repay the Outstanding Principal in full upon 90 days of receiving written notice of the requirement to repay the Outstanding Principal." *Id.* Also, it obligated Mr. Tarpenning to "immediately upon demand pay [Kraan Memphis] any amount not paid when due by [USREEB] under this document." *Id.* at 2. Mr. Tarpenning executed this loan agreement and a notary signed it. *Id.* at 4–5.

### B.        Loan Terms

The Loan Agreements share many common provisions.

*First*, all of the loan agreements list USREEB as the "Company" and Sean Tarpenning as "Guarantor" and either Kraan USA or Kraan Memphis as "Financier[.]" *See* Doc. 8-2 at 1 (Decl. Ex. A) (Kraan USA Loan 1A); Doc. 8-3 at 1 (Decl. Ex. B) (Kraan USA Loan 1B); Doc. 8-4 at 1 (Decl. Ex. C) (Kraan USA Loan 2); Doc. 8-6 at 1 (Decl. Ex. E) (Kraan USA Loan 3); Doc. 8-8 at 1 (Decl. Ex. G) (Kraan USA Loan 4); Doc. 8-10 at 1 (Decl. Ex. I) (Kraan Memphis Loan 1); Doc. 8-11 at 1 (Decl. Ex. J) (Kraan Memphis Loan 2).

*Next*, each loan agreement (except Kraan USA Loan 1A) contains the following provisions:

- Section 3.1:  "The Company shall repay the Outstanding Principal in full upon 60 [or 90] days of receiving written notice of the requirement to repay the Outstanding Principal."

- Section 4.2:  "The Guarantor unconditionally and irrevocably guarantees the punctual performance of all of the Company's obligations under this document.  The Guarantor must immediately upon demand pay the Financier any amount not paid when due by the Company under this document."

- Section 4.3:  "The Guarantor unconditionally and irrevocably indemnifies the Financier against all losses, damages, costs, charges, liabilities and expenses which the Financier may at any time suffer or incur because of any of the following:

    (a) An obligation of the Company expressed in this document is void, voidable or wholly or partially unenforceable.

    (b) The Company fails to perform an obligation under this document."

- Section 4.5:  "The obligations and liabilities of the Guarantor and the rights of the Financier under this document continue and are not affected by: . . . . (d) The death, mental illness or bankruptcy of the Company or the Guarantor if an individual, or the insolvency or deregistration of the Company or the Guarantor if a corporation."

- Section 6.1:  "A notice, demand, certification, process or other communication relating to this document must be in writing in English and may be given by an [authorized] representative of the sender."

### C.     USREEB Default

USREEB only made interest payments on the loans.  Doc. 8-1 at 7 (Kraan Decl. ¶ 31). According to Kraan USA records, it received the last interest payment on Kraan USA Loans 1B– 4 on December 18, 2019.  Doc. 8-1 at 7 (Kraan Decl. ¶ 33).  According to Kraan Memphis records, it received the last interest payment on Kraan Memphis Loans 1 and 2 on November 18,

2019. *Id.* (Kraan Decl. ¶ 36).  Plaintiffs did not make a demand of USREEB for repayment of the principal.  Doc. 13-1 at 5–7 (Tarpenning Decl. ¶¶ 18, 20).

### D.   USREEB's Bankruptcy

On October 2, 2020, USREEB filed a bankruptcy petition in the United States Bankruptcy Court for the District of Kansas.  Doc. 8-13 (Voluntary Pet. for Non-Individuals Filing for Bankruptcy).

### E.   Notice and Demand

On October 26, 2020, plaintiffs demanded payment from defendant under the guaranties for full payment of all sums due from USREEB.  Doc. 8-1 at 8 (Kraan Decl. ¶ 41).  "Tarpenning has neither responded to the demand nor made any payment to Kraan USA or Kraan Memphis." *Id.* at ¶ 42.  Defendant agrees that plaintiffs sent him a demand letter making a demand, but adds that plaintiffs did not make a demand on USREEB for any unpaid principal and made no attempt to just demand repayment of unpaid interest.  Doc. 13-1 at 9–10 (Tarpenning Decl. ¶¶ 27–28). Plaintiffs filed this lawsuit on October 27, 2020.  *See* Doc. 1 (Compl.).

## III.   Analysis

Plaintiffs' Motion for Summary Judgment makes a straightforward argument:  defendant signed contracts personally guaranteeing payment of plaintiffs' loans to USREEB, and defendant also agreed to indemnify plaintiffs for any loss if USREEB failed to perform under the Loan Agreements.  Doc. 8 at 13–14.  Plaintiffs loaned various sums to USREEB and, eventually, USREEB stopped making payments.  Doc. 8 at 15.  As a result, plaintiffs claim defendant is personally liable for USREEB's debts and he owes plaintiffs money under the guaranty and indemnity provisions of the contracts.  *Id.* at 15–16.  So, plaintiffs argue, the court should grant summary judgment in their favor.

Defendant makes four main arguments in response:  (1) plaintiffs failed to demand repayment from USREEB and therefore have no claims under the guaranty and indemnity provisions; (2) plaintiffs violated the implied duty of good faith and fair dealing; (3) plaintiffs' claims are barred by the first to breach rule; or (4) in the alternative, the court should defer ruling to allow defendant to conduct discovery.

In their Reply, plaintiffs narrow the issue before the court.  Plaintiffs concede they failed to demand repayment from USREEB.  Doc. 18 at 15–19.  Instead, plaintiffs argue that a demand wasn't necessary because it would have been a "useless act."  *Id.*

The court agrees with plaintiffs that the only question currently before the court is this one:  Does plaintiffs' failure to make a demand on USREEB for unpaid interest and principal preclude enforcement of the guaranty and indemnity provisions of the Loan Agreements?[3] Plaintiffs argue this question is a legal one that the court properly can resolve on summary judgment.  The court addresses this question, below.

This analysis begins with a preliminary issue:  the governing substantive law.

### A.      Governing Substantive Law

This case and its parties have ties to several states.  And, it's a diversity case, so the court must determine at the outset which state's law to apply.  "In actions where jurisdiction is based on diversity of citizenship, the substantive law, including the choice of law rules, of the forum state is applied." *Moore v. Subaru of Am.*, 891 F.2d 1445, 1448 (10th Cir. 1989).  Our court is located in Kansas, so, it applies the substantive law and choice of law rules adopted by Kansas

---

[3]      In their Motion for Summary Judgment, plaintiffs assert two claims:  breach of guaranty and breach of indemnification agreement.  Because the summary judgment record presents a genuine issue precluding summary judgment, the court can't grant summary judgment on either claim.  And, because the court denies plaintiffs' motion, the court need not address defendant's arguments about good faith and fair dealing, the first to breach rule, or discovery.

law. *Id.*

"Where the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement." *Brenner v. Oppenheimer & Co. Inc.*, 44 P.3d 364, 375 (Kan. 2002).  The parties here included a Missouri choice of law provision in their Loan Agreements.  *See* Doc. 8-2 at 4 § 7.3 (Decl. Ex. A) (Kraan USA Loan 1A) ("This document is governed by and shall be construed in accordance with the laws of Missouri and the parties irrevocably and unconditionally submit to the non-exclusive jurisdiction of those courts."); Doc. 8-3 at 4 § 7.3 (Decl. Ex. B) (Kraan USA Loan 1B) (same); Doc. 8-4 at 4 § 7.3 (Decl. Ex. C) (Kraan USA Loan 2) (same); Doc. 8-6 at 5 § 7.3 (Decl. Ex. E) (Kraan USA Loan 3) (same); Doc. 8-8 at 4 § 7.3 (Decl. Ex. G) (Kraan USA Loan 4); Doc. 8-10 at 5 § 7.3 (Decl. Ex. I) (Kraan Memphis Loan 1) (same); Doc. 8-11 at 4 § 7.3 (Decl. Ex. J) (Kraan Memphis Loan 2) (same).  So, Missouri's substantive law applies to plaintiffs' contract claims.

### B.    Contract Interpretation Under Missouri Law

Plaintiffs assert two contract claims against defendant.  The court applies the following legal standard when assessing plaintiffs' contract claims.

Interpreting a contract is a question of law.  *Lee v. Bass*, 215 S.W.3d 283, 288 (Mo. Ct. App. 2007) (citing *Sonoma Mgmt. Co. v. Boessen*, 70 S.W.3d 475, 479 (Mo. Ct. App. 2002)).  "The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent."  *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. 2003) (en banc) (citation omitted).  A contract's terms must be "read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning."  *Id.*

If a contract is ambiguous, "it will be construed against the drafter[.]" *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 776 (Mo. 2005) (en banc) (citation omitted).

"The parol evidence rule bars extrinsic evidence in construing an integrated contract, unless the contract is ambiguous." *Lee*, 215 S.W.3d at 288 (citing *Com. Tr. Co. v. Watts*, 231 S.W.2d 817, 820 (Mo. 1950)).  Any evidence outside the terms of a contract is "competent only to the extent that it provide[s] background consistent with the terms of the contract or addresse[s] any ambiguity in the contract." *Id.* (citing *Sherman v. Deihl*, 193 S.W.3d 863, 866 (Mo. Ct. App. 2006)).  "'A contract is ambiguous only if its terms are reasonably open to more than one meaning, or the meaning of the language used is uncertain.'" *Baird v. Dolgencorp, LLC*, No. 4:11 CV 1589 DDN, 2012 WL 6026478, at *4 (E.D. Mo. Dec. 4, 2012), *adhered to on reconsideration*, No. 4:11 CV 1589 DDN, 2013 WL 3462072 (E.D. Mo. Mar. 1, 2013) (quoting *Sonoma*, 70 S.W.3d at 479).  "If the contract is unambiguous, it will be enforced according to its terms." *Triarch Indus., Inc.*, 158 S.W.3d at 776.

Guaranty contracts "should be interpreted like other types of contracts." *Bruce v. Landmark Cent. Bank & Tr. Co.*, 592 S.W.2d 198, 200 (Mo. Ct. App. 1979) (citation omitted). "All terms of the contract should be given effect." *Id.*  And, terms are "to be understood in their plain and ordinary sense[.]" *U.S. Suzuki Motor Corp. v. Johnson*, 673 S.W.2d 105, 107 (Mo. Ct. App. 1984).  Missouri law requires that "the liability of a guarantor . . . be strictly construed[.]" *Id.*

## C.     The Contracts

The court begins its analysis with the contracts themselves, consisting of the Loan Agreements.  Plaintiffs argue defendant breached the Loan Agreements. *See* Doc. 8.  Defendant responds, asserting that plaintiffs failed to satisfy a condition precedent of the agreements—

demanding payment from USREEB—and, as a result, plaintiffs have no claims under the agreements.  *See* Doc. 13.  In their Reply, plaintiffs concede they failed to demand payment from USREEB, but assert that such a demand would have been a useless act.  In plaintiffs' view, they deserve summary judgment enforcing the agreements.  *See* Doc. 18.

## 1.    Guaranty Contracts

The Loan Agreements include a guaranty by defendant.  A guaranty is its own, independent contract.  *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 434 (Mo. 2003) (en banc) ("A guaranty, a species of contract, is a collateral agreement for another's undertaking and is an independent contract that imposes responsibilities different from those imposed in the agreement to which it is collateral.") (citation omitted).  A guaranty is a

> promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another who is liable in the first instance; a collateral undertaking by one person to be answerable for the payment of some debt or performance of some duty or contract for another person who stands first bound to pay or perform.

*Guaranty*, *Black's Law Dictionary* (11th ed. 2019).  So, ordinarily, a guaranty contract requires "failure of another who is liable in the *first* instance" or "another person who stands *first* bound to pay or perform."  *Id.* (emphasis added).

The Loan Agreements explicitly state who is liable in the first instance.  Here, the contracts specifically require that USREEB default before defendant becomes liable.  Section 4.2 of each Loan Agreement provides:  "The Guarantor unconditionally and irrevocably guarantees the punctual performance of all of the Company's obligations under this document.  The Guarantor must immediately upon demand pay the Financier any amount not paid when due by the Company under this document."  Doc. 8-3 at 2 (Decl. Ex. B) (Kraan USA Loan 1B); Doc. 8-4 at 2 (Decl. Ex. C) (Kraan USA Loan 2); Doc. 8-6 at 2 (Decl. Ex. E) (Kraan USA Loan 3); Doc.

8-8 at 2 (Decl. Ex. G) (Kraan USA Loan 4); Doc. 8-10 at 2 (Decl. Ex. I) (Kraan Memphis Loan 1); Doc. 8-11 at 2 (Decl. Ex. J) (Kraan Memphis Loan 2). Thus, according to the contracts, defendant was liable when the principal debtor, USREEB, failed to pay an amount when due.

Next, the court considers the Loan Agreements' terms to determine when an amount is due.

### 2.    Loan Due Dates

According to the contracts, defendant is liable as guarantor for "any amount not paid when due" by USREEB. So, the question becomes: when was payment due from USREEB?

Kraan USA Loan 1A provided a repayment date: USREEB "shall repay the Outstanding Principal in full on or before August 1st, 2017." Doc. 8-2 at 1 (Decl. Ex. A) (Kraan USA Loan 1A). Kraan USA Loan 1B renewed Kraan USA Loan 1A (Doc. 8-1 at 2–3 (Kraan Decl. ¶ 9)) but it changed the repayment provision, modifying it to provide: USREEB "shall repay the Outstanding Principal in full upon 60 days of receiving written notice of the requirement to repay the Outstanding Principal." Doc. 8-3 at 1 (Decl. Ex. B) (Kraan USA Loan 1B).

The other five loans followed Kraan USA Loan 1B's model: That is, they require USREEB to pay within 60 (or 90) of receiving written notice. Doc. 8-4 at 1 (Decl. Ex. C) (Kraan USA Loan 2) (requiring 60 days); Doc. 8-6 at 2 (Decl. Ex. E) (Kraan USA Loan 3) (requiring 90 days); Doc. 8-8 at 1 (Decl. Ex. G) (Kraan USA Loan 4) (requiring 90 days); Doc. 8-10 at 2 (Decl. Ex. I) (Kraan Memphis Loan 1) (requiring 90 days); Doc. 8-11 at 1 (Decl. Ex. J) (Kraan Memphis Loan 2) (requiring 90 days).

Ultimately, none of the loans was due until plaintiffs made a demand. A demand was the trigger, and plaintiffs concede they never pulled the trigger. *See* Doc. 18. USREEB never failed

to pay an amount due, therefore, as a matter of law, defendant isn't liable under the contracts for the principal or interest.

### D.      Useless Act

Plaintiffs strive to ameliorate their failure to make demand under the Loan Agreements, arguing that this omission does not preclude summary judgment because such a demand would have been a "useless act."  Doc. 18 at 15–19.  First, the court considers plaintiffs' Missouri authority addressing useless acts.  Then, the court compiles the authority into an analytical framework.

### 1.      Cases

*First*, plaintiffs cite *Darr v. Structural Systems, Inc.*, 747 S.W.2d 690 (Mo. Ct. App. 1988).  There, the parties' warranty required written demand and the plaintiffs failed to make a written demand.  *Id.* at 694.  Instead, plaintiffs made an oral demand and defendant refused to perform.  *Id.*  After a bench trial, the trial court found that plaintiffs made an oral demand, that this oral demand provided defendant with notice of the issue, and that defendant refused to perform.  *Id.*  So, the trial court entered judgment in favor of the plaintiffs.  *Id.*  The appellate court, applying a narrow standard of review, sustained the trial court's findings of fact and held, "[a]lthough [plaintiffs] gave verbal notice rather than written notice, the law does not require a party to do a useless act."  *Id.*

*Second*, plaintiffs cite *Stacey v. Redford*, 226 S.W.3d 913 (Mo. Ct. App. 2007).  In *Stacey*, the parties executed a property management agreement.  *Id.* at 915.  The agreement provided that, if plaintiff was delinquent in monthly payments more than three times in a 12-month period, the management agreement would terminate automatically.  *Id.* at 915–16.  Plaintiff was delinquent on monthly payments more than three times in a 12-month period.  *Id.* at

916.  Defendant failed to provide plaintiff written notice before termination and plaintiff argued

he was entitled to written notice.  *Id.* at 918.  The Missouri Court of Appeals held summary

judgment was warranted against plaintiff because plaintiff knew he was delinquent on more than

three payments, the contract specified that such a delinquency was incurable, and the contract

terminated automatically.  *Id.* at 918.  The court reasoned that requiring written notice in such

circumstances would have required a "vain and useless act."  *Id.*

     *Third*, plaintiffs cite *Providence State Bank v. Bohannon*, 426 F. Supp. 886 (E.D. Mo.

1977).  In *Bohannon*, a corporation defaulted and plaintiff sought to recover damages from

defendant, a stockholder who had not fully paid his stock subscription to the corporation.  *Id.* at

890.  Accordingly, plaintiff contended that the defendant stockholder was liable to the

corporation's creditors.  In response, defendant argued that "recovery of a judgment against the

corporate debtor and a nulla bona return on an execution [were] conditions precedent to

enforcing the corporate liability against him."  *Id.*  The court, applying Missouri and Kentucky

law, held plaintiffs didn't need to show recovery of a judgment against the principal debtor, the

corporation.  *Id.*  Instead, plaintiffs had to show "that recovery against the corporation is

futile[.]"  *Id.*  The plaintiffs made the requisite showing at a bench trial, where the court found

the corporation in question was "hopelessly insolvent, devoid of assets and out of business."  *Id.*

The court ruled that under "the uncontroverted facts of this case," it was "justified in holding that

no execution against the corporation was necessary to charge the stockholders, under the

principle that the law does not require a vain or impossible thing[.]"  *Id.* at 891 (citation and

quotation marks omitted).

     *Fourth*, plaintiffs cite *Home Trust Co. v. Josephon*, 95 S.W.2d 1148 (Mo. 1936) (en

banc).  In *Josephon*, defendant "indorsed" 16 promissory notes for $1,000 each and interest.  *Id.*

at 1149.  Defendant was the president, manager, director, and principal stockholder of the

"corporate maker of the notes[.]"  *Id.*  The notes went unpaid.  *Id.*  The Missouri Supreme Court

noted that, ordinarily, a party in defendant's position is entitled to notice but also, there are

exceptions to this rule.  *Id.* at 1151.  Based on trial testimony, the court found that, in "effect

[defendant] was the corporation.  He alone could have paid on behalf of the corporation."  *Id.* at

1152.  Thus, the court held, defendant "could not possibly have been prejudiced by plaintiff's

failure to give him formal notice that the notes had not been paid.  He had actual knowledge of

that fact.  The law does not require the useless formality of notifying him thereof."  *Id.*

*Fifth*, plaintiffs cite *Holman v. Modern Woodmen of America*, 243 S.W. 250 (Mo. Ct.

App. 1922).  In that case, plaintiff's husband disappeared without a trace.  *Id.* at 250–51.  The

life insurance policy issued by defendant required plaintiff to file a proof of actual death.  *Id.* at

251.  Plaintiff did not supply proof of actual death because she didn't have one.  *See id.*

Defendant argued plaintiff should've provided proof of *presumptive* death.  *Id.*  But the Missouri

Court of Appeals excused plaintiff from providing proof of presumptive death because it was

"evident that had such proofs been made the defendant would not have paid the policy" because

the policy plainly required proof of actual death.  *Id.* at 252.  The court sided with plaintiff,

reasoning, "[i]t is well settled that the law never requires the doing of a useless act."  *Id.*

*Sixth*, plaintiffs cite *Simmons v. Headlee*, 7 S.W. 20 (Mo. 1888).  Plaintiffs there sought

to recover land they claimed their ancestor had purchased.  *Id.* at 20.  The land had a long,

twisted history of litigation, ending when the land's original owners and plaintiffs' ancestor

settled and, under their settlement, the original parties retained possession of the land, as if no

sale had occurred.  *Id.*  The Missouri Supreme Court, applying the statute of frauds, held the law

did "not require [the original parties to] go through the formal ceremony of delivering possession

17

to [the purchaser, who gave up the land], and then go[] back into possession under the [settlement] contract in order to make it valid." *Id.* at 22. "The law is founded in reason and common sense, and requires the performance of no such useless acts to make the sale valid." *Id.* (citation and quotation marks omitted).

*Last*, plaintiffs cite *Insurance & Law Building Co. v. National Bank of the State of Missouri*, 5 Mo. App. 333 (1878). In that case from 1878, the plaintiff landlord leased a building to the defendant tenant. *Id.* at 334. The lease lasted three years and, after that three years, the tenant could renew for 10 years. *Id.* The three years passed, and the tenant remained in the building, paying rent. But later, the defendant tenant vacated. *Id.* at 334–35. The landlord "refused to accept a surrender" and sued for rent. *Id.* at 335. The tenant defendant argued that holding over beyond the three years of the lease did not renew the old lease, and, instead, the parties had created a new oral contract. *Id.* The Missouri Court of Appeals disagreed, holding that the party holding the option to renew was still bound by the original contract. *Id.* The parties didn't need to create a new, written contract because the original contract, the court held, continued to operate "and to write [the terms] over again would be one of those useless acts which the law does not require." *Id.* at 336.

## 2.    Framework

From plaintiffs' cited authority, the court synthesizes a framework for the case law on which plaintiffs rely. The framework has three steps: (1) whether the contracts make an act useless; (2) whether the purpose of the act is a mere formality; and (3) whether the facts and circumstances of the case, as determined by the factfinder, make the act useless. The court explains each step, below.

The first question is whether the contract itself makes an act useless.  In *Stacey*, the contract terminated automatically if plaintiff was delinquent more than three times during a 12-month period.  226 S.W.3d at 915–16.  And, plaintiff knew he was delinquent more than three times in a twelve-month period.  *Id.*  Because the contract worked this way, requiring written notice would have required a useless act.  *Id.* at 913.  In *Holman*, the defendant insurance company's policy explicitly required *actual* proof of death, therefore, providing proof of *presumptive* death was a useless act.  243 S.W. at 251–52.

This first step comes with a caveat:  courts applying Missouri law will not rewrite the contract.  *See, e.g.*, *Centerre Bank of Kan. City, N.A., v. Distribs., Inc.*, 705 S.W.2d 42, 48 (Mo. Ct. App. 1985).  Put differently, if a contract does not include a provision, the court will not read the provision into the contract.  *Centerre Bank* provides an example of this principle.  There, the bank made a loan that it could call at any time.  *Id.* at 44.  When the bank called the loan under circumstances that defendants believed were unfair, defendants raised a defense of a lack of good faith.  *Id.* at 45–46.  The Missouri Court of Appeals held that implying a duty of good faith on the right to call the loan would have rewritten the loan contract.  *Id.* at 48.  "The additional term would be that the note is not payable at any time demand is made but only payable when demand is made if such demand is made in good faith."  *Id.*  The court refused to rewrite the loan agreement.  When the personal guarantors of the loan executed their personal guaranties, "they knew, or were charged with the knowledge, that the note was payable on demand and under the law the [plaintiff] Bank could call the note at any time."  *Id.*

If an act isn't useless under the terms of the parties' agreement, the second step examines the purpose served by the act.  The cases suggest that if the purpose of an act is a mere formality, a court properly can hold the act is useless.  For example, in *Josephon*, the defendant, in effect,

was the corporation.  95 S.W.2d at 1152.  Accordingly, giving defendant formal notice that the corporation had failed to pay was a useless act and Missouri law does not require "useless formality[.]"  *Id.*  In *Simmons*, under the settlement, the original owners of land retained possession as if no sale had occurred.  7 S.W. at 21.  The court didn't require the original owner "to go through the formal ceremony" of delivering the deed to a purchaser, then regaining possession under the settlement.  *Id.* at 22.  In *Insurance & Law Building Co.*, the court held that rewriting the lease agreement after the tenant had exercised its option to renew was a useless formality.  5 Mo. App. at 336.

If the contract itself doesn't view an act as useless, and the act isn't a mere formality, the last question in the framework asks whether the facts and circumstances surrounding the act render it useless.  Plaintiffs' cited authority demonstrates this principle.  In *Darr*, the trial court found that plaintiffs made an oral demand for defendant's performance and the appellate court sustained this finding.  747 S.W.2d at 694.  The defendant refused plaintiffs' oral demand, thus rendering the act—giving written demand—useless.  *Id.*  In *Bohannon*, the court held, after a bench trial, that the corporation was "hopelessly insolvent, devoid of assets and out of business." 426 F. Supp. at 890.  Under those facts, no execution against the corporation was necessary to charge the stockholders, under the principle that "the law does not require a vain or impossible thing."  *Id.* at 891 (citation and quotation marks omitted).  In *Josephon*, defendant argued plaintiff was required to give him written notice.  95 S.W.2d at 1151.  Based on trial testimony, the court found that, in "effect [defendant] was the corporation.  He alone could have paid on behalf of the corporation."  *Id.* at 1152.  Thus, the court held, defendant "could not possibly have been prejudiced by plaintiff's failure to give him formal notice that the notes had not been paid.

He had actual knowledge of that fact. The law does not require the useless formality of notifying him thereof." *Id.*

### 3.    Applying the Framework

Having compiled this framework, the court now applies it to the facts of this case. Plaintiffs ask the court to hold, as a matter of law, that a demand upon USREEB for payment was a useless act because USREEB filed for bankruptcy. *See* Doc. 18 at 15–19. The court disagrees, and explains why, below.

#### a)    Step One

The first step of the useless act analysis asks whether the contract itself makes an act useless. *See Stacey*, 226 S.W.3d at 913; *see also Holman*, 243 S.W. at 252. When the court analyzes this question, the court may not read extra terms into the contract. *See Centerre Bank*, 705 S.W.2d at 48.

Here, a demand was the trigger that made the principal due from USREEB. Under the contract, this demand wasn't useless—because only a demand could make USREEB's obligations come due. Unlike *Stacey*, the parties' Loan Agreements didn't terminate automatically when defendant was delinquent on monthly payments. In fact, the summary judgment record shows USREEB was delinquent many times on its interest payments obligations under the contracts.[4]

---

[4]    Kraan USA Loan 1B, Kraan USA Loan 2, and Kraan USA Loan 4 require interest payments "on the first day of each calendar month." Doc. 8-3 at 1 (Kraan USA Loan 1B); Doc. 8-4 at 1 (Kraan USA Loan 2); Doc. 8-8 at 1 (Kraan USA Loan 4). Kraan USA Loan 3 and Kraan Memphis Loan 1 require interest payments on the last "day of each calendar month." Doc. 8-6 at 1 (Kraan USA Loan 3); Doc. 8-10 at 1 (Kraan Memphis Loan 1). Kraan Memphis Loan 2 requires USREEB to make interest payments "on the first day of each calendar month." Doc. 8-11 at 1 (Kraan Memphis Loan 2).

But, plaintiffs' records (setting aside Kraan Memphis because Kraan USA transferred the USREEB payments to Kraan Memphis) show that USREEB was delinquent on several occasions. In January, Kraan USA received payment on January 2. Doc. 18-2 at 2 (Wells Fargo Jan. Statement). In

Plaintiffs cite *Stacey* for the proposition that the Missouri Court of Appeals "excused a failure to provide written notice of default where the default was incurable." Doc. 18 at 17. Plaintiffs analogize the demand requirement in the Loan Agreements here to the written notice of default in *Stacey*. The contracts nominally describe the demand as "written notice." But plaintiff's analogy to *Stacey* is flawed. A demand that is a condition making repayment under the Loan Agreements due is different than the mere formality of a notice. Instead, the demand triggers USREEB's obligation to repay the principal. It is an essential step to imposing liability on USREEB and, after 60 or 90 days, defendant.

Moreover, the summary judgment facts here don't establish that a demand is a useless act because the contracts don't provide that USREEB's bankruptcy automatically triggers default. The only mention of bankruptcy in the Loan Agreements is in section 4.5, "Acknowledgements by Guarantor." Section 4.5 provides that the "obligations and liabilities of the Guarantor . . . under this document continue and are not affected by . . . bankruptcy of the Company[.]" Doc. 8-2 at 2 (Decl. Ex. A) (Kraan USA Loan 1A § 4.5(d)); Doc. 8-3 at 2 (Decl. Ex. B) (Kraan USA Loan 1B § 4.5(d)); Doc. 8-4 at 2 (Decl. Ex. C) (Kraan USA Loan 2 § 4.5(d)); Doc. 8-6 at 2–3 (Decl. Ex. E) (Kraan USA Loan 3 § 4.5(d)); Doc. 8-8 at 2 (Decl. Ex. G) (Kraan USA Loan 4 § 4.5(d)); Doc. 8-10 at 2–3 (Decl. Ex. I) (Kraan Memphis Loan 1 § 4.5(d));

---

April, Kraan USA received payment on April 3. Doc. 18-2 at 14 (Wells Fargo Apr. Statement). In June, Kraan USA received payments on June 6 and June 10. Doc. 18-2 at 22 (Wells Fargo June Statement). In July, Kraan USA received payments on July 3 and January 15. Doc. 18-2 at 27 (Wells Fargo July Statement). In August, Kraan USA received payments on August 8 and August 13. Doc. 18-2 at 31 (Wells Fargo Aug. Statement). In September, Kraan USA received two payments on September 6. Doc. 18-2 at 35 (Wells Fargo Sept. Statement). In October, Kraan USA received two payments on October 8. Doc. 18-2 at 39 (Wells Fargo Oct. Statement). In November, Kraan USA received payments on November 14 and November 18. Doc. 18-2 at 43 (Wells Fargo Nov. Statement). In December, Kraan USA received payment on December 18. Doc. 18-2 at 47 (Wells Fargo Dec. Statement).

Doc. 8-11 at 2 (Decl. Ex. J) (Kraan Memphis Loan 2 § 4.5(d)).  This provision undermines plaintiffs' argument:  a bankruptcy filing doesn't change plaintiff's liability.  As established above, defendant here isn't liable to plaintiffs because plaintiffs didn't demand repayment from USREEB.  Under the Loan Agreements, USREEB's bankruptcy doesn't affect defendant's liability, so the court can't find—at least not on this summary judgment record—that defendant is liable as a matter of law.

The contracts are silent about the effect of USREEB's bankruptcy on USREEB's liability.  Nothing in it suggests that USREEB's loan obligations ripen if USREEB files for bankruptcy protection.  And the court cannot read a term into contracts when the contracts themselves don't include the term.  *See Centerre Bank*, 705 S.W.2d at 48.

Plaintiffs suggest that *Holman* helps their argument because the court in that case excused plaintiff from providing written proof of death.  It reasoned that it was evident the insurer wouldn't have paid on the policy.  Doc. 18 at 17.  But, the only reason the insurer wouldn't have paid was because the *Holman* plaintiff's proof of presumptive death failed to comply with the contract's explicit requirement of proof of actual death.  243 S.W. at 250.

In sum, the summary judgment facts fail to establish—as a matter of law—that a demand from plaintiffs to USREEB for repayment of the loans was an inherently useless act.  Next, the court considers step two of the framework.

b)      *Step Two*

The second step of the inquiry asks about the purpose served by the act.  If the act serves no purpose beyond a mere formality, the act may qualify under Missouri law as a useless one.  *Josephon*, 95 S.W.2d at 1152; *Simmons*, 7 S.W. at 21; *Ins. & Law Bldg. Co.*, 5 Mo. App. at 336.  For example, in *Josephon*, plaintiffs were not required to provide formal notice that the

corporation failed to pay because defendant, in effect, was the corporation. 95 S.W.2d at 1152. In that limited respect, the current case resembles *Josephon* somewhat. But one critical detail distinguishes this case from that one. Here, USREEB, never failed to pay its obligations because plaintiffs never made the contractually required demands for USREEB'S payment of obligations to come due. USREEB only failed to make interest payments. Plaintiffs never made a demand for the delinquent interest payments, either. Under the contractual terms agreed by the parties, these demands are more than a mere formality.

The repayment demands served the purpose of establishing the due date for the loans. A demand would have activated liability for USREEB (and, if it defaulted, for defendant). And, as stated earlier, the demand is more than mere notice. According to their agreements, that's how plaintiffs qualified to recover the loaned amounts from defendant. These summary judgment facts demonstrate the importance of the demand requirement. Thus, a demand for repayment is not useless as it is more than a formality.

c)    <em>Step Three</em>

Step three of the framework asks whether the facts and circumstances surrounding the act render it useless. In this case, the specific question—at summary judgment—is whether USREEB's bankruptcy made a demand for payment useless as a matter of law. Put differently, could a reasonable trier of fact find that plaintiffs could recover despite USREEB's bankruptcy?

The answer is yes. The problem for plaintiffs is that the court, at summary judgment, can't make factual findings about the bankruptcy proceedings and other pertinent facts and circumstances because they are disputed. Plaintiffs ask the court to rule, as a matter of law, that USREEB couldn't pay upon plaintiffs' demand, and therefore such a demand was useless. But such a ruling would require the court to resolve factual disputes about USREEB's ability to pay.

Plaintiffs haven't provided evidence of USREEB's insolvency at every interval of the contracts' terms.

Plaintiffs' cited authority illustrates this point: *Darr*, *Bohannon*, and *Josephon* were decided at trial. Here, at summary judgment, the court cannot weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). For example, the *Bohannon* result depended on the court finding that the corporation was "hopelessly insolvent, devoid of assets and out of business." 426 F. Supp. at 890. The *Bohannon* court could reach that conclusion because there the court considered a full factual record after a bench trial. The court was entitled to weigh evidence and draw appropriate inferences for both parties. Here, the summary judgment record doesn't show, as a matter of law, USREEB is hopelessly insolvent. USREEB's bankruptcy case is not yet closed; the last entry as of this writing was September 23, 2021. *See* Order Granting First Interim Appl., *In Re US REEB LLC*, No. 20-21358 (Bankr. D. Kan. Sept. 23, 2021), ECF No. 503. Plaintiffs' only cited case in summary judgment posture is *Stacey*. 226 S.W.3d at 913. There, the Missouri Court of Appeals affirmed the trial court's grant of summary judgment because the parties' agreement terminated automatically when plaintiff was delinquent more than three times in a 12-month period. *Id.* at 916. That's not how the contracts at issue here work.

In addition to the bankruptcy, plaintiffs would have the court hold that USREEB's conflict with secured lenders and ensuing bankruptcy made the act of demanding repayment useless as a matter of law. Plaintiffs cite defendant's testimony at a bankruptcy hearing that USREEB hadn't sold any property since June or July of 2020. Doc. 18-5 at 20 (Tr. of Bankr. at

59:7–12, *In Re US REEB LLC*, 20-21358).[5]  Plaintiffs argue that "a 60-or 90-day demand prior to the bankruptcy filing would have been similarly useless."  Doc. 18 at 18.

The problem with plaintiffs' arguments is that the dates on which they focus—the bankruptcy and 60 to 90 days prior to the bankruptcy—have no significance under the contracts. Under the Loan Agreements, the loans were due when plaintiffs made demand for payment. Plaintiffs could call the loans at any time.  So, USREEB's balance sheet for a specific window of time is irrelevant under the contracts that plaintiffs drafted.  Plaintiffs can't use the benefit of hindsight to cherry pick dates.  That's not how the contracts operate.

And, that's not how bankruptcy works either.  USREEB filed for bankruptcy under Chapter 11.  Bankruptcy doesn't mean creditors will never get paid.  *See* NORTON BANKRUPTCY LAW & PRACTICE § 91:1 (3d ed. 2021) (explaining Congress "intended that Chapter 11 operate not only to preserve some sort of going-concern value, but also as a device for giving debtors a second chance").  Plaintiffs acknowledge as much when they say:  at "best, Plaintiffs will be entitled to whatever dividend, if any, the bankruptcy case yields to unsecured creditors."  Doc. 18 at 18.  Thus, plaintiffs acknowledge that they may receive a dividend from the bankruptcy case.  This means that a bankruptcy filing doesn't mean, as a matter of law, USREEB won't pay plaintiffs.

In sum, at the third step of the useless act inquiry, the court cannot find, as a matter of law, that the summary judgment facts present no triable issue whether a repayment demand was

---

[5]    Plaintiffs request the court take judicial notice of documents from USREEB's bankruptcy case. "Under Fed.R.Evid. 201(b)(2), which is applicable in bankruptcy cases, see Bankruptcy Rule 9017, a court may take judicial notice of facts that are not subject to reasonable dispute in that they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990) (citation and internal quotation marks omitted).  A "district court may utilize the doctrines underlying judicial notice in hearing a motion for summary judgment[.]"  *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1171–72 (10th Cir. 1979). The court thus takes judicial notice of plaintiffs' evidence from the USREEB bankruptcy case.

a useless act.  Plaintiffs' rights to call the loans were unlimited under the contracts and the court cannot arbitrarily select dates when USREEB *might* have defaulted.  To hold otherwise would contravene the purpose of the bankruptcy proceedings since plaintiffs concede they may recover in the bankruptcy proceeding.  And, at summary judgment, the court cannot engage in the factfinding necessary to sustain plaintiffs' claims.

## IV.    Conclusion

For the reasons explained by this Order, the court denies plaintiffs' Motion for Summary Judgment (Doc. 7).  Plaintiffs have not carried their summary judgment burden to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion for Summary Judgment (Doc. 7) is denied.

**IT IS SO ORDERED.**

**Dated this 28th day of September, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**