IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KRAAN INVESTMENTS (USA) LLC and
KRAAN MEMPHIS LLC,

        Plaintiffs,

v.

SEAN TARPENNING,

        Defendant.

Case No. 20-2538-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiffs Kraan Investments (USA) LLC ("Kraan USA") and Kraan Memphis LLC ("Kraan Memphis") filed this action against defendant Sean Tarpenning seeking to enforce the guaranty and indemnification provisions in their six loan agreements with U.S. Real Estate Equity Builders LLC ("USREEB"). Doc. 1 (Compl.). This matter comes before the court on defendant's Motion for Summary Judgment (Doc. 32). It seeks judgment against plaintiffs' claims on the theory that plaintiffs never made the requisite demand for USREEB to repay the loans; thus, defendant argues, plaintiffs can't possibly recover from him on the guaranty provisions in the six loan agreements. *See* Doc. 32 at 2. Plaintiffs filed a response opposing the motion. (Doc. 38). And defendant filed a Reply (Doc. 41).

The court now is ready to rule and it denies defendant's motion. The court explains why, below. But first, the court addresses plaintiffs' Motion to Substitute (Doc. 42).

**I.    Motion to Substitute**

Before the court is plaintiffs' Motion to Substitute Exhibit 1 to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment. Doc. 42. Plaintiffs inadvertently

submitted an unsigned and undated version of the Third Declaration Under Penalty of Perjury of Jacob H. Kraan.  Doc. 42 at 1; Doc. 38-2 (Third Kraan Decl.)

Defendant noted these shortcomings in his Reply.  The Reply argues the court should not consider the unsigned and undated Declaration submitted by plaintiffs.  Doc. 41 at 2.  And, defendant argues, the court should not consider Exhibits O and P because those exhibits are attached to the unsigned and undated Declaration.  *Id.*  After defendant filed his Reply, plaintiffs filed the Motion to Substitute.  Doc. 42.  Defendant opposes this Motion to Substitute.  Doc. 44.

The court finds the proposed substitution unnecessary.  The court need not consider Mr. Kraan's Third Declaration, Exhibit O, or Exhibit P[1] to decide the current motion for summary judgment.  Thus, the court denies the Motion to Substitute as a moot question and now turns to the merits of defendant's summary judgment motion.

## II.     Summary Judgment Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there exists "no genuine dispute [about] any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When applying this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).  A disputed "issue of fact is 'genuine' 'if the evidence is such that a

---

[1]     Defendant's Response in Opposition to Plaintiffs' Motion to Substitute confuses some of the exhibits.  On page one of his response, defendant calls the two relevant exhibits "unauthenticated emails (Exhibits P and Q[)]."  Doc. 44 at 1.  Defendant cites Docs. 38-3 and 38-4.  *Id.*  Doc 38-3 is Exhibit O, not Exhibit Q, and Doc. 38-4 is Exhibit P.  *See* Doc. 38-3; Doc. 38-4.

And, on page two of the same filing, defendant argues the court shouldn't consider "Exhibits O and P."  Doc. 44 at 2.  The court resolves this discrepancy by construing defendant's reference to Exhibit Q as one intending to refer to Exhibit O.  The citation to Exhibit Q specifically refers to emails, but Exhibit Q isn't an email.  Exhibits O and P are emails.

reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). And an "issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [for] those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)).

### III. Uncontroverted Facts

The facts recited below either are uncontroverted for purposes of defendant's summary judgment motion or, where genuinely controverted, are the facts viewed in the light most

3

favorable to plaintiffs, the parties opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### A.      Loan Agreements

U.S. Real Estate Equity Builder LLC ("USREEB") buys "distressed single family and multi-family residential and commercial properties, rehabs the properties, and then sells the properties." Doc. 13-1 at 2 (Tarpenning Decl. ¶ 5). Kraan USA and Kraan Memphis made a total of six loans, described below, to USREEB with Sean Tarpenning as Guarantor in each.

#### 1.      Kraan USA Loan 1A & 1B

Starting in June 2016, Kraan USA sold three properties in the Kansas City area to USREEB—listing Sean Tarpenning as "Guarantor"—for $45,000 and accepted a $45,000 promissory note in lieu of cash resulting in Kraan USA Loan 1A. Doc. 8-1 at 2 (First Kraan Decl. ¶ 7); *see also* Doc. 8-2 (Decl. Ex. A) (Kraan USA Loan 1A). Kraan USA Loan 1A required interest payments of $1,000 per month and had a repayment date—or date on which the loan would mature—of August 1, 2017. Doc. 8-2 at 1 (Decl. Ex. A) (Kraan USA Loan 1A ¶¶ 2.1, 3.1).

In August 2017, Kraan USA renewed the Kraan USA Loan 1A with USREEB and Mr. Tarpenning, resulting in Kraan USA Loan 1B. Doc. 8-1 at 2–3 (First Kraan Decl. ¶ 9); *see also* Doc. 8-3 (Decl. Ex. B) (Kraan USA Loan 1B). The terms provide that Kraan USA would loan USREEB $45,000 and USREEB would pay $1,000 in interest on the first of the month. Doc. 8-3 (Decl. Ex. B) (Kraan USA Loan 1B). Unlike Kraan USA Loan 1A, Kraan USA Loan 1B does not have a specified future date for repayment. *Compare* Doc. 8-2 at 1 (Decl. Ex. A) (Kraan USA Loan 1A ¶ 3.1) ("The Company shall repay the Outstanding Principal in full on or before August 1st, 2017"), *with* Doc. 8-3 at 1 (Decl. Ex. B) (Kraan USA Loan 1B ¶ 3.1) ("The

Company shall repay the Outstanding Principal in full upon 60 days of receiving written notice of the requirement to pay the Outstanding Principal"). Kraan USA Loan 1B requires that USREEB receives "written notice of the requirement to repay the Outstanding Principal" then it must repay the amount in full "upon 60 days[.]" Doc. 8-3 at 1. The Guarantor—Mr. Tarpenning—"unconditionally and irrevocably guarantee[d] the punctual performance of all of [USREEB]'s obligations under this document." *Id.* at 2. Also, Loan 1B requires Mr. Tarpenning to "immediately upon demand pay [Kraan USA] any amount not paid when due by [USREEB] under this document." *Id.* Mr. Tarpenning executed the agreement and a notary signed it. *Id.* at 5.

    **2.**    **Kraan USA Loan 2**

In August 2017, Kraan USA issued another loan to USREEB with Mr. Tarpenning as Guarantor—with the same terms as Kraan USA Loan 1B—for a principal amount of $45,000 and $1,000 per month interest payments. Doc. 8-1 at 3 (First Kraan Decl. ¶¶ 10–11); *see also* Doc. 8-4 (Decl. Ex. C) (Kraan USA Loan 2). The interest payments are due on the first day of the month. *Id.* at 1 (Kraan USA Loan 2 ¶ 2.1(a)). And, like Kraan USA Loan 1B, any outstanding principal is due "in full upon 60 days of receiving written notice of the requirement to repay[.]" *Id.* (Kraan USA Loan ¶ 3.1). Mr. Tarpenning executed the agreement and a notary signed it. *Id.* at 4–6.

    **3.**    **Kraan USA Loan 3**

On February 14, 2018, Kraan USA issued a third loan to USREEB for $50,000 that accrued interest at a rate of 20% per year. Doc. 8-1 at 3–4 (First Kraan Decl. ¶ 15); *see also* Doc. 8-6 (Decl. Ex. E) (Kraan USA Loan 3). The loan agreement lists Sean Tarpenning as Guarantor and he executed the agreement with a notary witnessing his signature. Doc. 8-6 at 1, 6

5

(Decl. Ex. E) (Kraan USA Loan 3).  The terms provide that USREEB must make interest payments on the last day of the month.  *Id.* at 1.  And, upon written demand sent to sean@usreeb.com, USREEB must pay the principal in full within 90 days.  *Id.* at 2.  The contract states, "[Sean Tarpenning] must immediately upon demand pay [Kraan USA] any amount not paid when due by [USREEB] under this document."  *Id.*  Mr. Tarpenning executed the agreement and a notary signed it.  *Id.* at 6.

    **4.**    **Kraan USA Loan 4**

On July 2, 2018, Kraan USA issued its last loan to USREEB, with Mr. Tarpenning as Guarantor, for a principal amount of $100,000 and an interest rate of 20% per annum.  Doc. 8-1 at 4 (First Kraan Decl. ¶ 17); *see also* Doc. 8-8 (Decl. Ex. G) (Kraan USA Loan 4).  The terms require USREEB to pay the interest on the first day of each calendar month.  Doc. 8-8 at 1 (Decl. Ex. G) (Kraan USA Loan 4).  The agreement requires USREEB to "repay the Outstanding Principal in full upon 90 days of receiving written notice of the requirement to repay the Outstanding Principal."  *Id.*  And, it provides, Mr. Tarpenning "must immediately upon demand pay [Kraan USA] any amount not paid when due by [USREEB] under this document."  *Id.* at 2.  Mr. Tarpenning executed this agreement and a notary signed it.  *Id.* at 5.

    **5.**    **Kraan Memphis Loan 1**

On February 14, 2018, Kraan Memphis agreed to lend "[USREEB]/Sean Tarpenning" a total of $170,000 with an interest rate of 20% per year with Sean Tarpenning as Guarantor.  Doc. 8-10 (Kraan Memphis Loan 1); *see also* Doc. 8-1 at 4 (First Kraan Decl. ¶ 19).  The loan agreement requires USREEB to pay interest on the principal on the first day of the calendar month.  Doc. 8-10 at 1 (Decl. Ex. I) (Kraan Memphis Loan 1).  It also states USREEB "shall repay the Outstanding Principal in full within 90 days of a written request submitted to

sean@usreeb.com." *Id*. at 2.  It provides that "[Mr. Tarpenning] must immediately upon demand pay [Kraan Memphis] any amount not paid when due by [USREEB] under this document." *Id.* Mr. Tarpenning executed the agreement and a notary witnessed it. *Id.* at 6.

      **6.**      **Kraan Memphis Loan 2**

In June 2018, Kraan Memphis executed another loan with USREEB and Mr. Tarpenning, agreeing to loan USREEB $50,000 with a 20% interest rate per year.  Doc. 8-1 at 5 (First Kraan Decl. ¶ 21); *see also* Doc. 8-11 (Decl. Ex. J) (Kraan Memphis Loan 2).  The terms require USREEB to pay interest on the principal on the first day of each calendar month.  Doc. 8-11 at 1 (Decl. Ex. J) (Kraan Memphis Loan 2).  And, it required USREEB to "repay the Outstanding Principal in full upon 90 days of receiving written notice of the requirement to repay the Outstanding Principal." *Id.*  Also, it obligated Mr. Tarpenning to "immediately upon demand pay [Kraan Memphis] any amount not paid when due by [USREEB] under this document." *Id.* at 2.  Mr. Tarpenning executed this loan agreement and a notary signed it. *Id.* at 4–5.

    **B.**    **Loan Terms**

The loan agreements share many common provisions.

*First*, all of the loan agreements list USREEB as the "Company" and Sean Tarpenning as "Guarantor" and either Kraan USA or Kraan Memphis as "Financier[.]" *See* Doc. 8-2 at 1 (Decl. Ex. A) (Kraan USA Loan 1A); Doc. 8-3 at 1 (Decl. Ex. B) (Kraan USA Loan 1B); Doc. 8-4 at 1 (Decl. Ex. C) (Kraan USA Loan 2); Doc. 8-6 at 1 (Decl. Ex. E) (Kraan USA Loan 3); Doc. 8-8 at 1 (Decl. Ex. G) (Kraan USA Loan 4); Doc. 8-10 at 1 (Decl. Ex. I) (Kraan Memphis Loan 1); Doc. 8-11 at 1 (Decl. Ex. J) (Kraan Memphis Loan 2).

*Next*, each loan agreement (except Kraan USA Loan 1A) contains each one of the following provisions:

- Section 3.1: "The Company shall repay the Outstanding Principal in full upon 60 [or 90] days of receiving written notice of the requirement to repay the Outstanding Principal."

- Section 4.2: "The Guarantor unconditionally and irrevocably guarantees the punctual performance of all of the Company's obligations under this document.  The Guarantor must immediately upon demand pay the Financier any amount not paid when due by the Company under this document."

- Section 4.3: "The Guarantor unconditionally and irrevocably indemnifies the Financier against all losses, damages, costs, charges, liabilities and expenses which the Financier may at any time suffer or incur because of any of the following:

    (a) An obligation of the Company expressed in this document is void, voidable or wholly or partially unenforceable.

    (b) The Company fails to perform an obligation under this document."

- Section 4.5: "The obligations and liabilities of the Guarantor and the rights of the Financier under this document continue and are not affected by: . . . . (d) The death, mental illness or bankruptcy of the Company or the Guarantor if an individual, or the insolvency or deregistration of the Company or the Guarantor if a corporation."

- Section 6.1: "A notice, demand, certification, process or other communication relating to this document must be in writing in English and may be given by an [authorized] representative of the sender."

**C.    USREEB Default**

USREEB only made interest payments on the loans.  Doc. 8-1 at 7 (First Kraan Decl. ¶ 31).  According to Kraan USA's records, it received the last interest payment on Kraan USA Loans 1B–4 on December 18, 2019.  Doc. 8-1 at 7 (First Kraan Decl. ¶ 33).  According to Kraan

Memphis's records, it received the last interest payment on Kraan Memphis Loans 1 and 2 on November 18, 2019. *Id.* (Kraan Decl. ¶ 36). Plaintiffs failed to demand repayment of the principal from USREEB. Doc. 13-1 at 5–7 (Tarpenning Decl. ¶¶ 18, 20).

### D.   USREEB's Bankruptcy

On October 2, 2020, USREEB filed a bankruptcy petition in the United States Bankruptcy Court for the District of Kansas. Doc. 8-13 (Voluntary Pet. for Non-Individuals Filing for Bankruptcy). On June 25, 2021, the Bankruptcy Court issued an Order Granting Motion to Approve Settlement and Compromise. Doc. 38-6. The Order provides that general "unsecured creditors of USREEB . . . will not receive a payout[.]" *Id.* at 7.

### E.   Notice and Demand

On October 26, 2020, plaintiffs demanded full payment from defendant Tarpenning under the guaranty provisions of all sums due from USREEB. Doc. 8-1 at 8 (First Kraan Decl. ¶ 41). "Tarpenning has neither responded to the demand nor made any payment to Kraan USA or Kraan Memphis." *Id.* at ¶ 42. Defendant agrees that plaintiffs sent him a demand letter making a demand, but adds that plaintiffs did not demand payment of unpaid principal by USREEB and never tried to demand repayment of unpaid interest. Doc. 13-1 at 9–10 (Tarpenning Decl. ¶¶ 27–28). Plaintiffs filed this lawsuit on October 27, 2020. *See* Doc. 1 (Compl.).

## IV.   Analysis

At first glance, this case seems simple enough. Plaintiffs loaned money to a company called USREEB under a series of loan agreements. Defendant personally guaranteed payment of those loans under a series of guaranty provisions. USREEB has failed to repay the loans, so plaintiffs demanded that defendant make good on his guaranty provisions. He didn't. But this is where things get trickier.

9

In an earlier Memorandum and Order, the court denied plaintiffs' Motion for Summary Judgment against defendant. *See* Doc. 43. The court reasoned that plaintiffs hadn't established—at least not on the summary judgment facts governing their motion—that they deserved judgment as a matter of law. The court reached this holding because, it concluded, the repayment wasn't due until 60 days (or 90 days, depending on the individual loan's terms) after it had "receiv[ed] written notice of the requirement to pay the Outstanding Principal." *Id.* at 14. Plaintiffs conceded that they never had provided USREEB with the specified "written notice" of demand. Since plaintiffs hadn't made that demand, the court ruled that plaintiffs hadn't established a default by USREEB. And if USREEB hadn't defaulted, then defendant hadn't defaulted on his duties under the guaranty provisions.

The earlier Memorandum and Order also addressed plaintiffs' useless act argument. This argument contended that if the loan agreements required a demand on USREEB as a condition to recover, a demand was a useless act because USREEB—the obligor on the loans—was insolvent. The court concluded that the summary judgment facts failed to establish that a demand was a useless act. *See* Doc. 43 at 15–27. This doctrine thus did not provide plaintiffs a reason—at least not a summary judgment reason—to forego the notice of the demand required by the loan agreements.

Defendant's Motion for Summary Judgment tries to extend his win on plaintiffs' motion. He contends that plaintiffs *never* may recover on their claims under his guarantees, so he's entitled to summary judgment against those claims. Specifically, he argues that: (1) plaintiffs violated their duty of good faith and fair dealing, as implied by Missouri law and so, they can't prevail on their claims under the guarantees; and, alternatively, (2) the first to breach rule bars plaintiffs from recovering on their claims against him. Parts A and B address those two

10

arguments. As these discussions explain, defendant hasn't established that he deserves summary judgment on plaintiffs' claims against him. Then, in Part C, the court returns to the useless act issue one more time.

### A.     Good Faith and Fair Dealing

Defendant argues plaintiffs violated the implied duty of good faith and fair dealing. Doc. 33 at 16–17. Specifically, because plaintiffs filed suit against defendant without making a demand for repayment from USREEB, plaintiffs violated the implied duty of good faith and fair dealing. Doc. 33 at 20–22.

Under Missouri law[2], every "'contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.'" *Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 473 (Mo. Ct. App. 1986) (quoting Restatement (Second) of Contracts § 205 (Am. L. Inst. 1981)); *see also Reliance Bank v. Paramont Props., LLC*, 425 S.W.3d 202, 206 (Mo. Ct. App. 2014). This implied duty prevents a party from exercising "a judgment conferred by the express terms of agreement in such a manner . . . to evade the spirit of the transaction or . . . to deny the other party the expected benefit of the contract." *Martin*, 710 S.W.2d at 473 (citations omitted). The covenant of good faith and fair dealing "is not a general reasonableness requirement[,]" nor is it "an overflowing cornucopia of wished-for legal duties.[]" *Schell v. LifeMark Hosps. of Mo.*,

---

[2]     The court applies the law of Missouri to substantive aspects of the parties' dispute. "In actions where jurisdiction is based on diversity of citizenship, the substantive law, including the choice of law rules, of the forum state is applied." *Moore v. Subaru of Am.*, 891 F.2d 1445, 1448 (10th Cir. 1989). Our court is based in Kansas, so, it applies the substantive law of Kansas. *Id.* This state's choice of law principles choose Missouri law.

"Where the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement." *Brenner v. Oppenheimer & Co. Inc.*, 44 P.3d 364, 375 (Kan. 2002). The parties here included a Missouri choice of law provision in their loan agreements. *See, e.g.*, Doc. 8-2 at 4 § 7.3 (Decl. Ex. A) (Kraan USA Loan 1A) ("This document is governed by and shall be construed in accordance with the laws of Missouri and the parties irrevocably and unconditionally submit to the non-exclusive jurisdiction of those courts."); Doc. 8-3 at 4 § 7.3 (Decl. Ex. B) (Kraan USA Loan 1B) (same).

92 S.W.3d 222, 230 (Mo. Ct. App. 2002) (citations and internal quotation marks omitted). Instead, this duty "only [is] an obligation imposed by law to prevent opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting." *Id.* (citations omitted). The party claiming a breach of this covenant "bears the burden of providing substantial evidence of bad faith." *Reliance Bank*, 425 S.W.3d at 207 (citing *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo. Ct. App. 2000)).

Defendant asserts that plaintiffs breached the duty of good faith and fair dealing because they ignored the provision in the loan agreements requiring a demand on USREEB. Doc. 33 at 20–21. Defendant argues, based on the parties' dealings and the plain language of the agreement, that the parties understood plaintiffs had to make a repayment demand of USREEB. *Id.* According to defendant, plaintiffs had full discretion to demand repayment and they failed to do so properly, thus violating the covenant of good faith and fair dealing. Plaintiffs respond that defendant "shows remarkable hutzpah" because defendant himself breached this duty and plaintiffs' "worst sin, in retrospect, was refusing to willfully violate the provisions of the automatic stay to make a useless demand upon a drastically insolvent, bankrupt company."[3] Doc. 38 at 18–19.

The summary judgment facts indisputably establish the express terms of the loan agreements at issue. Those terms grant plaintiffs untethered discretion to demand repayment from USREEB at any time. Equally certain is the proposition that Missouri law imposed an obligation on plaintiffs to exercise their discretion in good faith and with fair dealing. *Martin*,

---

[3] The court doesn't view the quiet controversy about the proper spelling of hutzpah/hutzpa/chutzpa as material to the issues at hand. *See* Alex Kozinski & Eugene Volokh, *Lawsuit Shmawsuit*, 103 Yale L. J. 463 (1993).

710 S.W.2d at 473 (citations omitted).  But these conclusions—even when added together—don't answer the central argument of defendant's Motion for Summary Judgment:  Do the summary judgment facts establish that plaintiffs violated their duty of good faith and fair dealing?

Defendant's argument trying to win this question consists of three parts.  One, the duty to repay was a condition precedent to his duties to guarantee payment and hold plaintiffs harmless.  Two, the contracts explicitly recite as much.  And three, plaintiffs made no demand.  So, defendant concludes, plaintiffs breached their good faith duty.

The court isn't persuaded by defendant's reasoning.  Defendant hasn't shown that the omitted demand tried "to deny the [defendant] the expected benefit of the contract[s]." *Id.* Indeed, it's undisputed that his company—USREEB—received the money loaned under the loan agreements.  Nor has defendant established that plaintiffs engaged in an "exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contract." *Schell*, 92 S.W.3d at 230.  The undisputed facts establish that plaintiffs loaned defendant's company hundreds of thousands of dollars.  Plaintiffs haven't exploited their rights under the loan agreements to receive more than one reasonably would expect.

In sum, defendant hasn't adduced "substantial evidence of bad faith," *Reliance Bank*, 425 S.W.3d at 207, or unfair dealing.  He isn't entitled to summary judgment based on this doctrine.[4]

## B.     First to Breach

Defendant next argues that plaintiffs' claims against him are barred by the first to breach rule and, so, he should prevail on these claims at summary judgment.  *See* Doc. 33 at 22–23.

---

[4] Defendant also contends his showing of plaintiffs' bad faith means that the doctrines of waiver, estoppel, and unclean hands preclude enforcement of defendant's guarantees.  *See* Doc. 33 at n.11.  The court's conclusions about bad faith dispense with this argument as well.

Under the first to breach rule, "a party to a contract cannot claim its benefit where he is the first to violate it." *R.J.S. Sec., Inc. v. Command Sec. Servs., Inc.*, 101 S.W.3d 1, 18 (Mo. Ct. App. 2003) (citing *Forms Mfg. Inc. v. Edwards*, 705 S.W.2d 67, 69 (Mo. Ct. App. 1985)). Only "a material breach may excuse the other party's performance." *Id.* (citing *Schaefer v. Rivers*, 965 S.W.2d 954, 958 (Mo. Ct. App. 1998)). Defendant's argument theorizes that plaintiffs "materially breached the agreements" at issue because plaintiffs sued defendant "without first demanding repayment from USREEB[,]" and this demand "was a condition precedent[.]" Doc. 33 at 23. Defendant's argument misapprehends the law because a party doesn't necessarily breach a contract by failing to comply with a condition precedent.

"As a matter of general contract law, conditions precedent are different from other contract terms: 'Unlike a mere contract term, the breach of which must be material before it excuses another party from performing, one party's failure to fulfill a condition precedent entirely excuses'" the obligations of the other party. *St. Louis Produce Mkt. v. Hughes*, 735 F.3d 829, 832 (8th Cir. 2013) (quoting *AIG Centennial Ins. Co. v. Fraley-Landers*, 450 F.3d 761, 763 (8th Cir. 2006)) (applying and citing Missouri Supreme Court cases). To say it more directly, defendant's argument confuses a contractual condition—in traditional terms, a condition precedent—with a contractual promise. Professor Williston's treatise explains the difference:

> A condition precedent in a contract is the typical kind. It must be performed or happen before a duty of immediate performance arises on the promise which the condition qualifies. A condition precedent is either an act of a party that must be performed or a certain event that must happen before a contractual right accrues or a contractual duty arises.

13 *Williston on Contracts* § 38:7 (4th ed. 2021).

The loan agreements signed by USREEB and defendant utilize conditions precedent. They obligated that company to "repay the Outstanding Principal in full upon 60 days of

14

receiving written notice of the requirement to pay the Outstanding Principal." *See* Doc. 8-3 at 1 (Decl. Ex. B) (Kraan USA Loan 1B ¶ 3.1).  This condition precedent functioned as a prerequisite to USREEB's duty to repay the loans.  When plaintiffs neglected to comply with this condition, they didn't breach a contractual promise.  Instead, they neglected to comply with a condition that the loan agreements required them to fulfill before USREEB's promise to repay would arise.

       Defendant's first to breach argument builds on his errant premise, *i.e.*, plaintiffs breached the loan agreements' guaranty provisions by failing to demand repayment from USREEB before demanding repayment from defendant.  So, defendant reasons, plaintiffs never can recover on their contractual rights under the loan agreements or defendant's guarantees.  But this argument also confuses the failure of a condition precedent with a breach of contractual promise.  Professor Williston's treatise again explains defendant's error:  "While the failure of a condition to occur excuses performance by the party whose performance is dependent on its occurrence, the failure of the condition does not, absent a promise that it would occur or would be performed, give rise to a breach of contract[.]"  13 *Williston on Contracts* § 38:7 (4th ed. 2021).  In sum, by neglecting to demand repayment from USREEB and suing defendant for repayment, plaintiffs didn't breach a contractual promise.  Instead, they simply failed to satisfy the conditions precedent to defendant's performance of his obligations under the loan agreements.  Defendant thus has failed to establish any breach by plaintiffs, and, without a breach, defendant can't properly invoke the first to breach doctrine.  This doctrine does not entitle him to summary judgment.[5]

---

[5]    Another treatise expresses the same principle in similar terms.  "The non-fulfillment of a promise is called a breach of contract, and creates in the other party a secondary right to damages.  It is the failure to perform a legal duty.  The non-occurrence of a condition will prevent the existence of a duty in the other party; but it may not create any remedial rights and duties at all, and it will not unless someone has promised that it shall occur."  8 *Corbin on Contracts* § 30.12 (2021).

C.   **Useless Act**

Earlier, when plaintiffs moved for summary judgment, they invoked the "useless act" doctrine.  *See* Doc. 7.  In their Reply, plaintiffs acknowledged[6] that they didn't demand repayment from USREEB, but argued that this failure was inconsequential.  Plaintiffs claimed such a demand would have amounted to a useless act; USREEB had filed for bankruptcy and, as a result, could not have fulfilled the repayment demand.  Plaintiffs lost this argument at summary judgment because they failed to show that USREEB was, as a matter of law, "hopelessly insolvent, devoid of assets and out of business."  *Providence State Bank v. Bohannon*, 426 F. Supp. 886, 890 (E.D. Mo. 1977), *aff'd*, 572 F.2d 617 (8th Cir. 1978).

In his summary judgment motion, defendant weighs in on the useless act issue.  He argues the useless act doctrine shouldn't apply here.  Doc. 33 at 23–29.

Missouri courts, the court recognizes, have applied the useless act doctrine in similar circumstances.  Missouri law doesn't require a repayment demand if the demand would've amounted to a useless act, even if the contract requires such a demand.  In *Heralson v. Mason*, a bond holder sued the surety[7] of a bond.  53 Mo. 211 (1873).  But the bond itself required the holder to "exhaust[] all legal means to collect . . . from the principal" before demanding payment from the surety.  *Id.* at 212.  There, as here, the holder failed to comply with this condition precedent.  *Id.*

---

[6]   Plaintiffs acknowledged that they "fail[ed] to make a demand upon USREEB for the unpaid principal due under the loan agreements prior to the USREEB Bankruptcy[.]"  Doc. 38 at 12.  But, plaintiffs argue, briefly, that filing a proof of claim in the bankruptcy action constitutes a demand upon USREEB.  Doc. 38 at 19.  Plaintiffs cite no authority for this proposition.  And, the court need not address their argument to decide this motion.

[7]   A suretyship is defined as the "legal relation that arises when one assumes liability for a debt, default, or other failing of a second party."  *Suretyship*, *Black's Law Dictionary* (11th ed. 2019).  It "'is generally unnecessary to distinguish between [a] suretyship and [a] guaranty.'"  *Id.* (quoting Herschel W. Arant, *Handbook of the Law of Suretyship and Guaranty* 14–15 (1931)).

16

The Missouri Supreme Court held that Missouri law did not require the plaintiff to comply with the condition precedent and pursue the principal debtor first, even though the instrument required it, because the principal was "palpably insolvent." *Id.* at 214. The court held

> if the principal was entirely insolvent and possessed no means by which anything could be coerced out of him . . . what useful purpose would have been subserved by taking the trouble and going to the useless expense of obtaining a judgment which would not have been worth the paper on which it was written. When a thing becomes useless, nugatory or ineffective, the law dispenses with it.

*Id.* at 213.

Here, as there, the loan agreements require that plaintiffs pursue the principal first but, if the principal is "entirely insolvent," Missouri law dispenses with this requirement. Thus, the determinative question is whether USREEB was entirely insolvent and, as a result, a repayment demand was useless. *Id.*

Missouri law views this issue as a question of fact. If plaintiff hasn't pursued the principal debtor and "a condition precedent to plaintiff's right to recover against defendant in his guaranty [is] that he must have exhausted all legal remedy to collect from the [principal debtor,]" then the issue of the principal debtor's solvency is "a question of fact[.]" *Wheeler v. Dake*, 107 S.W. 1105, 1107 (Mo. Ct. App. 1908). The court has viewed the summary judgment facts to present a genuine dispute about USREEB's solvency. This dispute, the court concluded, precluded summary judgment.

The parties continue to dispute USREEB's solvency and plaintiffs' likelihood of recovery in the bankruptcy proceedings. Plaintiffs acknowledge that, when they filed this action, "there existed a theoretical possibility that Plaintiffs might recover some portion of the loans made to USREEB[.]" Doc. 38 at 16. But, plaintiffs argue, that possibility of recovery "no longer exists."

*Id.* Predictably, defendant disagrees. Defendant counters that "the amount [that will benefit unsecured creditors] is unknown, but to say there absolutely will be no dividend is simply incorrect[.]" Doc. 41 at 4. And therein lies the issue: the summary judgment record presented by the parties' competing motions doesn't resolve USREEB's solvency. There is a genuine dispute about USREEB's solvency and, as a consequence, there is a genuine dispute about whether a repayment demand would have been a useless act.

The court questions whether anything but a trial can resolve this question. Given that view—and because the parties already have engaged in considerable summary judgment practice—the court directs the parties to confer before the forthcoming pretrial conference and report to Magistrate Judge Teresa J. James whether the court should accelerate the trial schedule.

## V.     Conclusion

For the reasons explained above, defendant has not carried his summary judgment burden. To "secure the just, speedy, and inexpensive determination" of this action as required by Fed. R. Civ. P. Rule 1, the court directs the parties to confer about an accelerated trial date.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 32) is denied.

**IT IS FURTHER ORDERED THAT** plaintiffs' Motion to Substitute Exhibit 1 to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 42) is denied.

**IT IS SO ORDERED.**

**Dated this 6th day of December, 2021, at Kansas City, Kansas.**

                                                                  s/ Daniel D. Crabtree     
                                                                   **Daniel D. Crabtree**
                                                                   **United States District Judge**